# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN MOFIELD,<br><br>    Plaintiff,<br><br>    vs.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | Case No. 1:06-cv-1007 OWW TAG<br><br>FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM AN ADMINISTRATIVE DECISION |

Plaintiff Glen Mofield ("Claimant") seeks judicial review of an administrative decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 et seq. Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed his complaint on August 3, 2006 and his opening brief on January 21, 2007. (Docs. 2, 14). The Commissioner filed an opposition to the appeal on February 9, 2007, to which Claimant timely replied. (Docs. 15, 16).

**JURISDICTION**

On January 21, 2003, Claimant protectively filed for DIB, and, on February 12, 2003, he filed his DIB application, alleging an onset date of September 12, 2002. (Administrative Record ("AR") 63-66). The application was denied initially and on reconsideration. (AR 47-50, 53-56). After timely requesting a hearing, Claimant appeared before Administrative Law Judge ("ALJ") Bert C. Hoffman, Jr., on February 10, 2005. (AR 57, 436-440). The ALJ continued the hearing

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart, as Commissioner of the Social Security Administration.  42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d)(1).

to enable Claimant to allow his newly retained counsel to become familiar with Claimant's case. (AR 438-440). Claimant and his attorney appeared before ALJ Hoffman for the rescheduled hearing on November 10, 2005. (AR 390-435). On January 20, 2006, the ALJ issued a written decision finding that Claimant was not disabled. (AR 15-25). The Appeals Council denied Claimant's request for review on June 8, 2006. (AR 5-7). The Appeals Council's decision, therefore, became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). The initiation of an appeal in the district court must be commenced within sixty (60) days of the Appeals Council's decision. 42 U.S.C. § 405(g). On August 3, 2006, Claimant timely filed this action. (Doc. 2).

## STATEMENT OF FACTS

The facts have been presented in the transcript of the November 10, 2005, administrative hearing ("administrative hearing"), the ALJ's decision, and the briefs filed by Claimant and the Commissioner, and, therefore, will only be summarized here. At the administrative hearing, Claimant testified that he was born on October 28, 1949 and was 56 years old. (AR 393). He further stated that he graduated from high school. (AR 394). He served in the military from July 1969 through November 1971, and fought in Vietnam from January 1970 until his November 1971 honorable discharge. (Id.). Claimant testified that he receives a disability pension from the Department of Veterans Affairs (the "VA"). (AR 397).

Regarding his work history, Claimant stated that he last worked in 2002 as a foreman at Kraft, having worked himself up the ladder doing various jobs since 1976. (AR 398-403). Claimant explained that, on September 1, 2002, he quit his job because he could not learn the new computer technology and, therefore, he fell behind in his work and engaged in verbal altercations with his supervisors, for both of which he anticipated that he would be fired. (AR 402-404, 413). Claimant admitted that he could not handle the stress involved in the job. (AR 420-421). He added that, by the time he applied for DIB, his employer no longer wanted him to work there due to his Hepatitis C, although he had informed Kraft that he had Hepatitis C several months before he stopped working in 2002. (AR 403-404).

///

With respect to his disabling impairments, Claimant testified that he smoked marijuana both because it relaxed him and it eased his glaucoma-induced eye pain, adding that his treating physician informed him that marijuana was less harmful to his body than was alcohol consumption. (AR 407-408, 422). Claimant indicated that he had a prescription for medical marijuana. (AR 424). Claimant next testified that he has post traumatic stress disorder ("PTSD") resulting from his involvement in the Vietnam war, which had worsened since the commencement of the Iraqi war. (AR 411). He reported that he is in counseling at the VA for his PTSD and anti-social behavior. (AR 415). According to Claimant, the PTSD, in conjunction with his physical ailments, causes him to be short tempered and have night and, less frequently, day sweats, especially when he is around a lot of people. (AR 411). In addition, the sound of a whistle triggers bad moods and thoughts about the world falling in on him because of an ambush that occurred in Vietnam. (AR 411-412). Claimant testified that other triggers include loud noises, flies, and diesel fuel. (AR 414). He stated that when the triggers cause bad moods, he wants to be alone, adding that he generally has problems being around a group of people. (AR 415). He further reported that he suffers from depression, which the medication he is prescribed helps control. (AR 422). Claimant further testified that he has sleep apnea, which makes it difficult for him to sleep. (AR 417-418). He reported that he occasionally has nightmare and, more frequently, has flashbacks; he avoids situations in which people will be behind me; and has difficulty concentrating for any length of time. (AR 419-420).

Regarding his daily life activities, Claimant testified that he is divorced and lives in a house with a female friend who he has known for twenty years and who comes and goes as she pleases, his son and his girlfriend, and, occasionally, his son's children. (AR 394-395). His sole income consists of a 100% disability payment from the VA, which he started receiving in 2004. (AR 421). Claimant drives from Visalia to Fresno to pick up his medications, which cause him only minor side effects. (AR 423, 425). He added that he cannot drive long distances without stopping and resting because of his fatigue. (AR 434).

Claimant testified that his average day consists of making instant oatmeal in the microwe, reading the newspaper, watching television shows, and sitting in his backyard, but he does

nothing for fun other than occasionally vacationing in Oklahoma, where some of his relatives live and there are fewer people in general. (AR 395, 425-427). He also walks around his backyard for exercise and occasionally stays with his female friend on her houseboat, but has not done so this year.. (AR 427, 432). Claimant testified that, other than microwave oatmeal, he eats food prepared by his son's girlfriend or fast food, and occasionally goes to a restaurant with his mother or brother. (AR 429). Claimant stated that he would like to move to Oklahoma, and acknowledged that he and his brother took five horses across Oklahoma a couple of years earlier, but he could not recall when. (AR 395-397). He testified that he does not take care of the yard or do much-needed house repairs. (AR 431). Claimant demonstrated an interest in NASCAR driving, old western movies and series, and restoring his collection of cars, but explained that he has not been able to work on the cars for years. (AR 428, 432-433).

Claimant further testified that he became an intravenous heroin user and marijuana smoker in Vietnam, but explained that he stopped using heroin when he returned to the United States. (AR 405-407). He added that he quit drinking alcohol approximately eight years earlier. (AR 407-408). Claimant stated that his PTSD affected his everyday actions and thoughts, and prevented him from engaging in certain activities such as outdoor camping. (AR 414, 421).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is more than a mere scintilla but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686 (citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)). Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above.

1  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the
2  record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman
3  v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).
4       It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.
5  Richardson, 402 U.S. at 400, 91 S.Ct. at 1426-1427.  If the evidence supports more than one
6  rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d
7  577, 579 (9th Cir. 1984).  Moreover, if there is substantial evidence to support the administrative
8  findings, or if there is conflicting evidence that would support a finding of either disability or
9  non-disability, the Commissioner's decision is conclusive.  Sprague v. Bowen, 812 F.2d 1226,
10 1229-1230 (9th Cir. 1987).  Nevertheless, a decision supported by substantial evidence will be
11 set aside if the proper legal standards were not applied in weighing the evidence and making the
12 decision.  Brawner v. Secretary of Health and Human Serv., 839 F.2d 432, 433 (9th Cir. 1988).

### RELEVANT LEGAL FRAMEWORK

14      The Social Security Act defines "disability" as the "inability to engage in any substantial
15 gainful activity by reason of any medically determinable physical or mental impairment which
16 can be expected to result in death or which has lasted or can be expected to last for a continuous
17 period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act
18 also provides that a claimant shall be determined to be under a disability only if his impairments
19 are of such severity that claimant is not only unable to do his previous work but cannot,
20 considering claimant's age, education, and work experiences, engage in any other substantial
21 gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

### Sequential Evaluation Process

23      The Commissioner has established a five-step sequential evaluation process for
24 determining whether a person is disabled.  20 C.F.R. §§ 404.1520.  Step one determines if he is
25 engaged in substantial gainful activities.  If he is, benefits are denied.  20 C.F.R. §§ 404.1520(b).
26 If he is not, the decision maker proceeds to step two, which determines whether claimant has a
27 medically severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).
28 ///

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520(f). See Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 2291(1987).

The initial burden of proof rests upon a claimant to establish a prima facie case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). In terms of the five-step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ADMINISTRATIVE FINDINGS**

The ALJ found at step one that Claimant has not engaged in substantial gainful activity since his alleged onset date of September 1, 2002. (AR 18, 24). At step two, the ALJ

6

determined that Claimant's PTSD, depressive disorder not otherwise specified ("nos"), and anti-social personality traits significantly affected his ability to work and, thus, were severe impairments. (AR 18, 24). ALJ Hoffman concluded that Claimant's chronic Hepatitis C and his marijuana use, which predated his onset date, as well as his glaucoma, sleep apnea, heel spurs, and fungal problems were controlled with medications and other treatments and, accordingly, were non-severe. (AR 18-19, 24). At step three, the ALJ assessed whether Claimant's impairments were among those acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Listing of Impairments). The ALJ concluded that Claimant's medically determinable impairments did not meet or equal a listed impairment, specifically listings 12.04 and 12.06 which address affective and anxiety disorders, respectively. (AR 19, 24). The ALJ noted that he found Claimant's testimony and alleged limitations not wholly credible in light of his daily activities, out-of-state travel, social interactions with family members and a steady girlfriend, and the third-party questionnaire that his son completed. (AR 23-24). After concluding that Claimant had no physical limitations, and retained the residual functional capacity to perform unskilled work with limited public contact due to his mental impairments, the ALJ determined at step four that Claimant could not perform his past relevant work. (AR 24-25). At step five, the ALJ found that, given Claimant's unlimited physical exertional capacity, his age, and education, and using Rule 204.00 as a framework, Claimant was capable of performing a wide range of unskilled work that was available in the national economy. (AR 25). The ALJ, therefore, concluded that Claimant was not disabled and not entitled to DIB under the Act. (AR 25).

**ISSUES**

Claimant asserts that the Commissioner erred as a matter of law. Specifically, Claimant alleges that:

A. The ALJ erred in his assessment of Claimant's Mental Limitations; and

B. The ALJ erred by concluding, without the aid of a vocational expert, that there were jobs in the national economy that Claimant could perform.

///

As discussed above, this Court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A.    Assessment of Claimant's Residual Functional Capacity (RFC)**

A claimant's RFC is what he can still do despite his physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); 20 C.F.R. § 404.1545. In the instant case, Claimant's physical RFC is not at issue. (See Doc. 14 and below).

1.   Weight Accorded Physicians' Opinions

Claimant's primary argument on appeal is that the ALJ improperly assessed his work-related limitations based on his mental impairments. (Doc. 14, pp. 4-11). Claimant asserts that ALJ Hoffman selectively chose portions from the 2003 opinion of examining psychologist Richard Engeln, Ph.D., and relied on Dr. Engeln's and other consulting psychiatric opinions to a greater extent that he did the opinions of Claimant's treating doctors. (Doc. 14, pp. 4-5).  In addition, Claimant contends that the ALJ failed to explain the inconsistencies in the medical records and between the opinions of the treating and consulting physicians sufficiently to provide a substantial and legitimate reason for according more weight to the consultants' opinions, referencing only Claimant's ability to travel to Oklahoma and live in California. (Id.).  Based on the ALJ's arbitrary selection of the treatment records and the portions of opinions upon which he relied, without providing adequate reasons for his choices, Claimant asserts that the ALJ substituted his own opinion for those of the professional doctors, which, in itself, constitutes legal error. (Doc. 14, p. 8).

The courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830, as amended (9th Cir. 1996).  The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998); Lester v. Chater, 81 F.3d at 830.  Where the treating doctor's

opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)). This can be done by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). The ALJ must do more than offer his conclusions – he also must set forth his own interpretations and explain why they, rather than the doctor's, are correct. Embrey v. Bowen, 849 F.2d 418, 421-422 (9th Cir.1988).

In Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion of an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not substantial evidence." Id. at 632 (quotation and citation omitted). "By contrast, when an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence." Id. (citation omitted). "Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." Id. (citations omitted).

Regardless of the weight given to a treating physician's medical opinion, it is not binding on the ALJ with respect to the ultimate determination of disability. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-1195 (9th Cir. 2004) (treating physician had opined that claimant "met or equaled the criteria" for a listed impairment under 20 C.F.R. § 404, Subpt. P, App. 1, § 105C); Magallanes, 881 F. 2d at 751 ("treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability").

///

Courts within the Ninth Circuit have recognized various reasons deemed sufficient for the ALJ to disregard a treating or examining physician's opinion. These reasons include: conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for physicians' reports that are based substantially on the claimant's subjective complaints of pain. Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1463-1464 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ also may disregard a physician's opinion that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986) (brackets added). In contrast, vague, broad, or generalized reasons are insufficient grounds for the ALJ to reject a treating physician's opinion. McAllister v. Sullivan, 888 F.2d at 602.

In his decision, ALJ Hoffman found that Claimant suffered from several nonexertional impairments, including PTSD, depressive disorder NOS, and anti-social personality traits, "which significantly affect his abilities to perform basic work-related activities and are therefore 'severe.'" (AR 18). The ALJ ascertained that Claimant's nonexertional impairments did not meet or equal a listing and that he retained "the mental capacity to handle the demands of unskilled work requiring limited public contact." (AR 19). The ALJ based this conclusion, in part, on his finding that Claimant "has no restriction of the activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and has not experienced episodes of extended decompensation." (Id.). He then discussed, in detail, Claimant's mental and physical medical records, including the reports of examining consultant Richard Engeln, Ph.D., to whom he accorded substantial weight except with respect to Dr. Engeln's conclusion that Claimant could return to his past relevant work, stating that the treating records did not support that conclusion. (Id.). ALJ Hoffman also accorded substantial weight to VA psychiatrist T. Glenn, who, in June 2003, noted that Claimant displayed obsessive behavior and impaired impulse control, which was likely exaggerated by his inability to sleep and nightmares, but reported that his prognosis was good and his global assessment of functioning ("GAF") was approximately 60. (AR 21). The ALJ discounted a

2005 evaluation by VA psychiatrist Dr. Armen Azatian on the basis that Dr. Azatian reported symptoms and significant problems not reflected in Claimant's treatment records or his prior assessments and because he used a check-the-box form to indicate that Claimant suffered every symptom of his mental impairments. (AR 21-22).

ALJ Hoffman discussed Claimant's treatment records in detail, stating that he gave them substantial weight. (AR 21-22). He noted that Claimant's GAF ranged between 60 and 70, indicating that he suffers only mild to moderate limitations. (AR 23). In addition, the ALJ reported that Claimant's prior conflicts at work did not demonstrate that he was incapable of work-related social contact, and his living arrangements, ability to drive himself to appointments, and weekly visits with his mother indicated that he could perform unskilled work with minor nonexertional limitations. (AR 23-24).

As addressed in his discussion of Claimant's treatment records, the ALJ correctly noted that Claimant saw a VA psychiatrist at three-to-four month intervals after he received emergency-room treatment in April 2003 for PTSD-related symptoms, including anxiety, flashbacks, nightmares, and depression. (See AR 335-338; 328-334 (initial intake dated 5/08/02); 299-300 (9/26/03 appointment); 288-289 (11/21/03 appointment); 279-281 (4/30/04 appointment); 270-272 (7/30/04 appointment); 259-260 (10/29/04 appointment); 253-255 (3/28/05 appointment duplicated at 344-345)). At his initial intake, Claimant complained of a lack of energy or will to do things that he used to enjoy, feelings of hopelessness, helplessness, worthlessness, restlessness, irritability, anger, nightmares, and flashbacks of events from his combat days in Vietnam. (AR 328-329). Objectively, and upon examination, the nurse perceived no major abnormalities and diagnosed a mood disorder NOS and recommended that he see a psychiatrist for support. (AR 331-333). During his early appointments, Claimant reportedly was doing well, which was objectively confirmed by the treating doctors. (AR 288-289, 299-300). Commencing after November 2003, Claimant's doctors added anti-social traits to his prior diagnosis of PTSD and depressive order NOS. (AR 270-272, 259-260, 253-255). As he faced additional stressors, such as his DIB hearing and financial difficulties, he experienced increased stress, anger, and irritability. (Id.). Claimant was prescribed medications for his

depression, anxiety, and to help him sleep. (See generally AR 299-300, 288-289, 279-281, 270-272, 259-260, 253-255). Claimant consistently was given a GAF between 60 and 70 and encouraged to stop smoking marijuana. (Id.).

The two examining consultants' opinions to which the ALJ accorded great weight were the 2003 reports of Dr. Engeln and VA psychiatrist Trevor Glenn. (AR 19, 21, 195-202, 311-320). Based upon his discussion with, and objective tests of, Claimant on May 13, 2003, and his review of some DSS records, Dr. Engeln reported that, once Claimant acclimated to strange surroundings, he became "pleasant socially;" his IQ was average; and he showed no evidence of distress or mental/emotional illness. (AR 198-199). Dr. Engeln opined that Claimant suffered from an "Adjustment Response to changed in medical-physical status – Stress Disorder related to work demands," but that he can adjust to a job and deal with job-related issues, adding that any limitations would be physical. (AR 199).

Dr. Glenn saw Claimant on June 3, 2003 to ascertain whether he was eligible for an increased VA disability rating due to his PTSD. (AR 311). According to Dr. Glenn's report, Claimant has suffered severe PTSD-related symptoms since 1973, including anger, loss of temper especially when loud noises were present, isolation, nightmares, and flashbacks. (AR 313-314). Claimant also reported the panic attacks and depression, which were not service-related. (AR 314-315). Upon examination, Dr. Glenn noted that Claimant did not appear unduly tense or stressed and remained pleasant and relaxed throughout the interview. (AR 316). His test results revealed that his short-term memory, attention, concentration, recall, insight, judgment, and self-understanding were good. (AR 316-317). Dr. Glenn reported that Claimant had "impaired impulse control," a short temper, and problems sleeping, including nightmares. (AR 317). He concluded that Claimant suffered stress, which led to increased emotional problems, when faced with, e.g., the computer system that he had problems learning and financial problems, but his diagnosis was PTSD and marijuana abuse, with a GAF of 60. (AR 318). Overall, Dr. Glenn reported that Claimant's PTSD impairment was moderate and his prognosis was good with anticipated treatment. (AR 320).

///

The ALJ did not err in relying on these consultants' opinions, which were supported by the treatment records in that they concluded that Claimant suffered from mental disorders that worsened when he was faced with significant stressors, but otherwise he had only limited day-to-day problems. Nor did the ALJ err in discounting the 2005 evaluation submitted by treating psychiatric resident Armen Azatian, M.D., finding that it was not supported by the treatment records. (AR 21-22; 345-254). Dr. Azatian completed different types of check-box forms, repeatedly marking the box or sentence that indicated Claimant did not have the mental stability, concentration, etc., to perform even an unskilled job. (AR 347-354). It is not clear on what basis Dr. Azatian reached these conclusions, although he claimed to have treated Claimant four times between March 27 and August 3, 2005.[2] (AR 346). A treating doctor's opinion that is unsupported by clinical notes, fails to provide the basis for his opinion, and is in the form of a check-off report, is entitled to little weight. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996); Young, 803 F.2d at 968.

Based on the foregoing, because the ALJ gave specific and legitimate reasons for his reliance on the treating records, which supported the opinions of the examining mental-health consultants upon which he also relied, and adequately explained why he discounted the check-the-box assessment by a treating physician that was not supported by the treating records, the ALJ did not err in finding that Claimant's mental health limitations were not so severe as to preclude him from performing unskilled work that entailed little social intercourse.[3]

2. Failure to Consider VA's Finding of Disability

Claimant next asserts that the ALJ erred by acknowledging, but not according the great weight mandated by Ninth Circuit precedent to, the VA's finding that he was 70% disabled due to his PTSD. (Doc. 14, p. 10-11). Claimant further contends that, because the ALJ failed to state

---

[2] The Administrative Record evidences that Dr. Azatian treated Claimant on October 29, 2004, and March 28, 2005. (AR 253-255, 259-260).

[3] Claimant also contends that Dr. Engeln's report does not present a longitudinal analysis of his emotional history, which his treating physician's opinion included. (Doc. 14, pp. 8-9). Claimant's treatment records, however, also present a "longitudinal" history of Claimant's mental health and related limitations, and the ALJ relied heavily on those and the consultants' opinions that they supported. (AR 19-22).

any reasons for disregarding the VA's disability determination renders his decision arbitrary and capricious. (Id. at 11).

This Circuit has held that an ALJ must consider and give great weight to a claimant's VA disability rating. McCartery v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). In McCartery, the Court determined that this is called for because of the similar goals and criteria under the VA's and the Social Security's disability programs. Id. (citations omitted). The McCartery Court, however, further held that the two programs were not identical and, therefore, the ALJ could give less weight to a claimant's VA disability rating if he provided specific, persuasive, and valid, reasons, supported by the record, for doing so. Id. (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)); see also 20 C.F.R. § 404.1520 (stating a finding of disability by another agency is not binding on the Social Security Administration).

Here, the ALJ noted that Claimant received a VA rating of 70% disability due to his PTSD and, overall, the VA found him 100% disabled after concluding that he was unemployable as of September 3, 2002. (AR 21). The ALJ discounted the VA's disability rating after concluding that Claimant's mental-health treatment records did not support the VA's PTSD-related 70% disability rating. (AR 22; see also Section A1 above (discussing relevant opinion and treatment records)). Thus, the ALJ provided an adequate reason for not according substantial weight to the VA disability rating. McCartery, 298 F.3d at 1076.

**B.      Claimant's Employability**

Claimant asserts that the ALJ improperly concluded that there were a significant number of jobs in the national economy that he could perform because the grids did not sufficiently address Claimant's limitations and the ALJ did not rely on a VE's testimony, who should have been called to testify given the inadequacy of the grids in this case. (Doc. 14, pp. 11-14). Claimant contends that, because the ALJ concluded that he could not perform his past relevant work, and had not properly ascertained that Claimant could perform any other full-time work, the matter should be reversed for payment of benefits. (Id. at 13-15).

After a claimant has established a prima facie case of disability by demonstrating he cannot return to his past relevant work, the burden shifts to the ALJ to identify specific jobs

existing in substantial numbers in the national economy that claimant can perform despite his limitations. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ can satisfy this burden by either (1) by relying on the Medical-Vocational Guidelines ("grids") at 20 C.F.R. Pt. 404, Subpt. P, App. 2), which "constitute administrative notice of the existence of jobs for persons with specified limitations," or (2) taking the testimony of a vocational expert. Tackett v. Apfel, 180 F.3d 1094, 1098-1099 (9th Cir. 1999); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

Because the ALJ may rely on the grids when considering claimants with the same, basic levels of impairment, the use of the grids is not always proper. Burkhart, 856 F.2d at 1340 (citation omitted). If a claimant has nonexertional limitations[4] that significantly limit his range of work, the use of the grids in determining disability is inappropriate. Tackett, 180 F.3d at 1102. In such instances, a vocational expert must be called to identify jobs that match the abilities of the claimant, given his limitations. Id. Nevertheless, if an ALJ determines that a claimant's nonexertional limitations do not significantly affect his ability to perform a full range of work, then use of the grids is appropriate. Id. at 1101; see also Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986), as amended, 794 F.2d 1348 (where there is substantial evidence supporting the ALJ's conclusion that a claimant's anxiety disorder would not prevent him from performing work that he physically was able to do, use of the grids was appropriate).

Under Social Security Ruling ("SSR") 85-15, to perform unskilled work, one must have the mental capacity to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting" on a sustained basis. SSR 85-15.[5] According to SSR 85-15, unskilled work generally involves jobs in which the individual works with objects rather than people. Id.

---

[4] Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an individual's physical strength." Soc. Sec. Rul. 96-8. See also Desrosiers v. Sec'y of Health and Human Serv., 846 F.2d 573, 579 (9th Cir. 1988); 20 C.F.R. § 404.1569a; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(d), (e).

[5] Although not binding on federal courts, deference is accorded to Social Security Rulings, which represent the Social Security Administration's interpretation of its law, absent a finding that the Rulings are erroneous or inconsistent with the Act or the regulations. Chavez v. Dep't of Health and Human Serv., 103 F.3d 849, 851 (9th Cir. 1996) (citing Quang Van Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.1989)).

Although the ALJ did not apply the grids to dictate the result in this case, the ALJ used the grids as a framework to find that, based on claimant's unlimited RFC, age, education, and work experience, there were a significant number of unskilled jobs in the economy which claimant could perform despite his limitations. (AR 23-24). As noted above, if an ALJ determines that a claimant's nonexertional limitations do not significantly affect his ability to perform a full range of work, then use of the grids is appropriate. Tackett, 180 F.3d at 1101. The ALJ found that Claimant's ability to perform work at all exertional levels was not significantly compromised by his nonexertional limitations; i.e., that Claimant could have limited public contact. (AR 23-24). Using grid rule 204.00 as a framework, the ALJ determined that, based on Claimant's ability to perform work at all exertional levels, the fact that his nonexertional limitations did not significantly compromise his ability to perform work at all exertional levels, and given his age, education, and past relevant work experience, Claimant could perform a significant number of jobs available in the national economy. (AR 24-25); 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 204.00. Thus, the ALJ concluded that a finding of not disabled was within the framework of Rule 204.00. (AR 25).

Since the ALJ found that Claimant could perform the physical and mental demands of the jobs administratively noticed under the grids, it was not necessary for him to call a vocational expert. As noted above, if nonexertional limitations "significantly" affect a claimant's ability to perform work, then vocational expert testimony is required. Tackett, 180 F.3d at 1102. Because, however, ALJ Hoffman properly determined that Claimant's nonexertional limitations did not "significantly compromise" his ability to perform work, the use of the grids by the ALJ was entirely appropriate.

## **CONCLUSION AND RECOMMENDATIONS**

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded Claimant is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards.

///

Based on the foregoing, this Court RECOMMENDS:

1. That Claimant's Social Security complaint be DENIED; and

2. That Judgment be ENTERED for Defendant Michael J. Astrue and against Claimant Glen Mofield.

These Findings and Recommendations are submitted to the United States District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than fifteen (15) days after service of these Findings and Recommendations, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties in compliance with this Court's Local Rule 72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than ten (10) court days after service of the objections and otherwise in compliance with this Court's Local Rule 72-304(d).  The District Judge will review the Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **January 25, 2008**                    /s/ Theresa A. Goldner
                                                 UNITED STATES MAGISTRATE JUDGE